UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TELLIS WILLIAMS            )
                           )
v.                         )     No. 3:10-1176
                           )     JUDGE CAMPBELL
UNITED STATES OF AMERICA   )

MEMORANDUM

I. Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Docket No. 1), filed by the Movant/Petitioner (hereinafter "Petitioner"), pro se. The Court set an evidentiary hearing to consider Petitioner's claim that trial counsel was ineffective for failing to file an appeal in the underlying criminal case, and appointed counsel for the Petitioner. (Docket No. 12). The Government has filed a Response (Docket No. 18), along with an affidavit of trial counsel, and other exhibits. (Docket Nos. 18-1, 18-2, 18-3).

The Court held an evidentiary hearing on June 4 and 6, 2012. (Docket Nos. 29, 30). The parties filed post-hearing briefs on the issue of trial counsel's alleged failure to file a notice of appeal, and the appropriate remedy for the alleged failure. (Docket Nos. 31, 34).

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d). (Docket No. 10 in Case No. 3:09-00090). Prior to trial, the Petitioner raised issues regarding his conditions of confinement at the Robertson County Detention Facility, and counsel for the Petitioner, Ronald C. Small, presented evidence to

support his claims during a six-day evidentiary hearing, and ultimately secured the Petitioner's transfer to another facility. (Docket No. 94 in Case No. 3:09-00090).

Prior to the completion of the evidentiary hearing, the Petitioner entered a guilty plea to the charge in the Indictment. (Docket Nos. 79, 89 in Case No. 3:09-00090). At the subsequent sentencing hearing, on December 7, 2009, the Court sentenced the Petitioner to 168 months of imprisonment, which was below the applicable sentencing guideline range, as a Career Offender, of 188-235 months. (Docket Nos. 109, 110, 115 in Case No. 3:09-00090). The reduction of Petitioner's sentence was based on his harsh conditions of pretrial confinement and his efforts in challenging those conditions. (Id.)

At the conclusion of the sentencing hearing, the Court advised the Petitioner of his right to appeal and that any notice of appeal had to be filed within ten days. (Docket No. 115, at 52-53 in Case No. 3:09-00090). The Court also gave the Petitioner a Notice of Appeal form. (Id.) The record reveals that no appeal was taken by either the Petitioner or the Government. Approximately ten months after the sentencing hearing, however, the Petitioner filed a pro se Motion For Leave To File A Delayed Appeal (Docket No. 111 in Case No. 3:09-00090). The Court denied the Motion, concluding that it was without authority to grant an extension of the time set by the appellate rules to file a notice of appeal. (Docket No. 112 in Case No. 3:09-00090).

III. Analysis

A. The Petitioner's Claims

Petitioner contends that his conviction should be vacated on the following grounds: (1) he received the ineffective assistance of counsel; (2) his guilty plea was not made knowingly,

intelligently, and voluntarily; (3) he was subjected to prosecutorial misconduct; and (4) his sentence was enhanced by a prior conviction that was unconstitutional.

Because the Court concludes that Petitioner is entitled to a delayed appeal, the Court finds it unnecessary to rule on the merits of Petitioner's other claims. Nothing herein is intended to preclude the Petitioner from raising those claims on direct appeal or in a later collateral proceeding if otherwise permitted by applicable law.

B. <u>The Section 2255 Remedy</u>

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." <u>Reed v. Faley</u>, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); <u>Grant v. United States</u>, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall consider the "files, records, transcripts, and correspondence relating to the judgment under

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

attack" in ruling on a petition or motion filed under Section 2255. In addition, where the same judge considering the Section 2255 motion also presided over the underlying criminal proceedings, the judge may rely on his own recollection of those proceedings. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 n.4, 52 L.Ed.2d 136 (1977); Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

C. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065.

In Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000), the Supreme Court reiterated prior decisions that it is "professionally unreasonable" for a lawyer to fail to file an appeal when specifically instructed by a client to do so. In such a case, the defendant is entitled to a delayed appeal and need not show any likelihood of success on its

merits. Id.

When the client has not specifically instructed his or her attorney to file an appeal, however, the court is to consider whether the attorney "consulted" with the defendant about the advantages and disadvantages of filing an appeal. 120 S.Ct. at 1035. If the attorney has consulted with his client about the possibility of filing an appeal, his or her conduct is considered professionally unreasonable only if he or she fails to follow the defendant's express instructions. Id. If the attorney failed to consult with his or her client, the court is to examine whether that failure constitutes deficient performance. Id. at 1035-36. See also Regalado v. United States, 334 F.3d 520, 524-25 (6th Cir. 2003).

Petitioner contends that he instructed his trial counsel, Mr. Small, to file a notice of appeal after his sentencing hearing on December 7, 2009. At the evidentiary hearing on Petitioner's Motion To Vacate, Mr. Small testified that he did not recall Petitioner requesting that he file a notice of appeal after the sentencing hearing:

> I don't recall any conversation with Mr. Williams. I believe there was another proceeding directly following ours. It may have been a situation where the marshals had to get him out pretty quickly, but I don't recall any substantive conversations particularly about filing a notice of appeal. I mean, I would think that if I had such a conversation, I would have in fact filed a notice of appeal.

(Transcript of Hearing on June 4, 2012, at 93 (Docket No. 29)).

Mr. Small testified that he subsequently sent a letter dated December 9, 2012 (Exhibit No. 20) to the Petitioner at the Overton County Jail, where the Petitioner was being housed, in which he enclosed the Judgment and advised the Petitioner about the deadline for filing a notice of appeal. (Docket No. 29, at 86). Having received no response to the letter, Mr. Small assumed that the Petitioner did not want to appeal. (Id., at 94-95). Mr. Small testified that if the Petitioner

5

had asked him to file a notice of appeal after the sentencing hearing, he would have filed it, and pointed out that it would have taken only a minute or so to do so. (Id., at 96-97). If the Petitioner had made that request, according to Mr. Small, he would not have sent the December 9, 2012 letter. (Id., at 97).

Mr. Small testified that he did not know when the Petitioner was transferred from the Overton County Jail, and explained that he does not receive notice when a client is moved from one facility to another due to security reasons. (Id., at 95). According to Mr. Small, his clients are usually designated to a Bureau of Prisons' facility 30 days or more after sentencing, and it is not typical for a client to be transported within a week or less. (Id., at 95-96).

On the other hand, the Petitioner testified that he asked Mr. Small to appeal his sentence before he left the courtroom after the sentencing hearing on December 7, 2011:

> When the U.S. Marshals handed me the appeal form [from the court], I pointed to the appeal form and kind of leaned over to my lawyer and told him, I want you to use this. I want to appeal. Ron Small, I don't think he was paying too much attention at that time because the judge was still speaking. But after the court was over and they was putting me in handcuffs to take me back downstairs, I looked at my lawyer, Ron Small, and I told him, 168 months I want to appeal. And he said, I am going to come down and I am going to see you.

(Transcript of Hearing on June 6, 2012, at 117-18 (Docket No. 30)). According to the Petitioner, he did not see Mr. Small after that hearing. (Id., at 119). He was transported back to the Overton County Jail that day, and was transferred at 5 or 6 a.m. on December 11, 2009 from that Jail to the federal court building and on to a facility in Mason, Tennessee. (Id., at 119-22; Exhibit No. 29). According to the Petitioner, he was not allowed to take any of his possessions when he left Overton County, and he did not receive Mr. Small's December 9, 2009 letter. (Id., at 121-22). In early January, 2010, the Petitioner testified, he was transferred to Oklahoma, and in early

6

February, 2010, he was transferred to Pollock, Louisiana. (Id., at 122-23).

Once he arrived at Pollock, the Petitioner testified that he wrote to the clerk of court for a copy of the docket sheet in his case, and in early April, 2010, with assistance from someone who worked in the law library, learned that a notice of appeal had not been filed in his case. (Id., at 123-24). Through a letter dated April 22, 2010 (Exhibit No. 23), the Petitioner requested that Mr. Small work on filing a notice of appeal. (Id., at 125). The Petitioner received a letter, dated April 27, 2010 (Exhibit 24), in response in which Mr. Small pointed out that the Petitioner did not respond to his December 9, 2009 letter and request the filing of a notice of appeal. (Id., at 125). The Petitioner sent another letter to Mr. Small, dated May 4, 2010 (Exhibit No. 25), in which he indicated that he requested an appeal after the sentencing hearing, and had never received the December 9, 2009 letter. (Id., at 126).

As noted above, the Petitioner filed a pro se Motion For Leave To File A Delayed Appeal on October 25, 2010 (Docket No. 111 in Case No. 3:09-00090). The Court denied the Motion, concluding that it was without authority to grant an extension of the time set by the appellate rules to file a notice of appeal. (Docket No. 112 in Case No. 3:09-00090).

Having observed the demeanor of both the Petitioner and Mr. Small during the evidentiary hearing in this case, the Court is persuaded that the Petitioner asked Mr. Small to file a notice of appeal after the sentencing hearing on December 7, 2012, and in the commotion that took place as the Petitioner was handcuffed and removed from the courtroom, Mr. Small did not hear the Petitioner make the request. The subsequent actions by both the Petitioner and Mr. Small confirm this conclusion. Mr. Small, for his part, drafted a letter advising the Petitioner in writing about his appeal deadline, and his opinion about appealable issues. He is unlikely to

7

have taken the time to draft and send such a letter if he had heard the Petitioner make the earlier request to file an appeal. Drafting the letter would likely take longer than filing the notice of appeal form with the clerk after the sentencing hearing. The Petitioner, for his part, was transported unusually quickly by the Bureau of Prisons from the Overton County Jail to other facilities over a three-month period, and did not receive Mr. Small's letter. Having failed to receive the letter and believing that trial counsel had heard him request the filing of a notice of appeal, the Petitioner did not file his own appeal or make efforts to direct counsel to do so during the critical 14-day appeal period.

Under these circumstances, the Court concludes that Mr. Small was not ineffective for failing to file a notice of appeal. On the other hand, the Court is persuaded that, due to an unusual confluence of events, the Petitioner was denied access to the courts during the critical 14-day period for filing a direct appeal because he was transferred to a new facility within a week after sentencing, and consequently, did not receive his counsel's letter alerting him to the need to file an appeal. See Dorn v. Lafler, 601 F.3d 439, 443-44 (6th Cir. 2010)(Prisoners have a constitutional right of access to the courts, and legal counsel, which extends to direct appeals). As a result, the Petitioner was deprived of the opportunity to pursue a direct appeal. Prejudice is presumed where the denial of access results in the denial of the right to pursue a direct appeal. Id., at 444-45.

Accordingly, the Court concludes that the Petitioner is entitled to a delayed appeal. The Court vacates its Judgment In A Criminal Case, filed in Case No. 3:09-00090 (Docket Nos. 109, 110), and reenters the Judgment as of the date of entry of this Order. The Judgment otherwise remains unchanged. The Petitioner is advised that he has a right to appeal the re-imposed

sentence, and that the time for filing a notice of appeal from the reimposed sentence is 14 days, pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A)(i). See, e.g., Rosinski v. United States, 459 F.2d 59 (6th Cir. 1972); Johnson v. United States, 146 Fed. Appx. 4, 2005 WL 1506050, at \*\* 2 (6th Cir. June 27, 2005); United States v. Polson, 343 Fed. Appx. 88, 2009 WL 2568096, at \*\* 4 n. 1 (6th Cir. Aug. 21, 2009).[2] Petitioner's current counsel, Michael E. Terry, shall represent the Petitioner on appeal.

The Clerk of Court is directed to file a copy of this Memorandum and Order in Criminal Case No. 3:09-00090.

## IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is entitled to a delayed appeal.

It is so ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

---

[2] The Court rejects the Petitioner's argument that he is entitled to a new sentencing hearing as a remedy for the loss of a direct appeal.