UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TELLIS WILLIAMS ) | |
| ) | |
| v. ) | No. 3:10-1176 |
| ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA ) | |

MEMORANDUM

I. Introduction

Pending before the Court are certain claims raised by Petitioner in a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Docket No. 1), along with supplemental materials filed by the Petitioner in support of the Motion, and the Government's filings in opposition.

Based on the record of Petitioner's underlying conviction, and the entire record in this case, and for the reasons set forth herein, the Court concludes that Petitioner's Motion To Vacate is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d). (Docket No. 10 in Case No. 3:09-00090). Prior to trial, the Petitioner raised issues regarding his conditions of confinement at the Robertson County Detention Facility, and counsel for the Petitioner, Ronald C. Small, presented evidence to support his claims during a six-day evidentiary hearing, and ultimately secured the Petitioner's transfer to another facility. (Docket No. 94 in Case No. 3:09-00090).

Prior to the completion of the evidentiary hearing, the Petitioner entered a guilty plea to

the charge in the Indictment. (Docket Nos. 79, 89 in Case No. 3:09-00090). At the change of plea hearing, after describing the circumstances of the bank robbery, Task Force Officer Kevin Carroll testified that the bank provided surveillance images of "outstanding quality and high resolution," and that after the images were shown on the local news, two concerned citizens called and identified the Petitioner as the robber. (Docket No. 114, at 10-14, in Case No. 3:09-00090). When officers stopped a vehicle in which the Petitioner was a passenger and placed him under arrest, they found currency in his pocket that matched the serial numbers of the bills taken from the bank. (Id., at 13-14). Upon searching the driver of the vehicle, officers found a firearm that matched the one used in the robbery, and the Petitioner claimed ownership of the gun. (Id.)

At the subsequent sentencing hearing, the Court sentenced the Petitioner to 168 months of imprisonment, which was below the applicable sentencing guideline range, as a Career Offender, of 188-235 months. (Docket Nos. 109, 110, 115 in Case No. 3:09-00090). The reduction of Petitioner's sentence was based on the harsh conditions of pretrial confinement and his efforts in challenging those conditions. (Docket No. 115, at 42-50, in Case No. 3:09-00090). No appeal was taken by either the Petitioner or the Government.

On December 13, 2010, the Petitioner filed a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Docket No. 1) in this case. The Court set an evidentiary hearing to consider Petitioner's claims, and appointed counsel for the Petitioner. (Docket No. 12). The parties presented testimony and other evidence on all claims at the two -day hearing. (Docket Nos. 29, 30). After the hearing and the filing of post-hearing briefs, the Court issued a Memorandum and Order (Docket Nos. 35, 36) holding that the

Petitioner was entitled to a delayed direct appeal. In light of that holding, the Court found it unnecessary to rule on the Petitioner's other claims. (Id.).

The Petitioner subsequently filed a direct appeal in the underlying criminal case in which he raised ineffective assistance of counsel claims. (Docket No. 135 in Case No. 3:09-00090). The Sixth Circuit declined to rule on those claims and remanded the matter to this Court with the instruction to reopen this case and rule on those claims. (Id.) Once the appeals court issued its mandate, this Court entered an Order (Docket No. 37; Docket No. 137 in Case No. 3:09-00090) re-opening this case and setting a briefing schedule on Petitioner's claims.

The Petitioner filed motions seeking another evidentiary hearing, which the Court has denied by prior Orders (Docket Nos. 73, 83). In resolving Petitioner's claims herein, the Court has considered the evidence presented at the two-day evidentiary hearing held prior to the criminal appeal, as well as the entire record in the underlying criminal case and this case.

### III. Analysis

A. The Petitioner's Claims

In his most recent filings, the Petitioner contends that his conviction should be vacated because he received the ineffective assistance of counsel.[1]

---

[1] Petitioner, thus, appears to have abandoned the other claims raised in earlier filings – specifically, claims that his guilty plea was not made knowingly, intelligently, and voluntarily; that he was subjected to prosecutorial misconduct; and that his sentence was enhanced by a prior conviction that was unconstitutional. (Docket Nos. 1, 31). Even if Petitioner continued to press these claims, the Court would find them to be without merit. The involuntary guilty plea and prosecutorial misconduct claims are without merit for the reasons set forth herein regarding Petitioner's first ineffective assistance of counsel claim. Petitioner's sentencing claim is without merit based on the Supreme Court's decision in Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001)(A petitioner may not attack a conviction used to enhance a federal sentence in an action brought under Section 2255 unless the conviction was obtained in violation

3

B. The Section 2255 Remedy

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[2] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Faley, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall consider the "files, records, transcripts, and correspondence relating to the judgment under attack" in ruling on a petition or motion filed under Section 2255. In addition, where the same judge considering the Section 2255 motion also presided over the underlying criminal proceedings, the judge may rely on his own recollection of those proceedings. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 n.4, 52 L.Ed.2d 136 (1977); Ray v. United States, 721

---

of his right to counsel); (Presentence Investigation Report, at ¶ 31 in Case No. 3:09-00090 (According to state records, Petitioner was represented by counsel)).

[2] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

F.3d 758, 761 (6th Cir. 2013); Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

C. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065.

In order to show actual prejudice in the guilty plea context, the Petitioner generally must show that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 47 U.S. 52, 106 S.Ct. 366, 369-70, 88 L.Ed.2d 203 (1985); Lafler v. Cooper, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed. 2d 398 (2012); Missouri v. Frye, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2052.

5

Petitioner argues that his guilty plea in the underlying criminal case was not entered knowingly and voluntarily because it was "uncounseled," and because he was subjected to harsh conditions of confinement at the time he entered the guilty plea. As discussed above, trial counsel for Petitioner presented evidence about the Petitioner's conditions of confinement during six days of hearings spread out over the month of September, 2009. Petitioner entered his guilty plea on September 22, 2009, prior to the completion of those hearings.

There is no indication in the transcript of Petitioner's change of plea hearing that Petitioner's guilty plea was not made knowingly and voluntarily.[3] The Court began the hearing by placing the Petitioner under oath, and then explained the elements the Government would have to prove in order for him to be found guilty of the armed bank robbery charge. (Transcript of Change of Plea Hearing, at 3-5 (Docket No. 114 in Case No. 3:09–00090)). The Court then asked the Petitioner if he felt like he understood the nature, meaning and cause of the charge against him, and the Petitioner said he did. (Id., at 4-5). The Court asked the Petitioner if he and his lawyer had talked about what the Government would have to prove in order for him to be found guilty, and any possible defense that he might have. (Id., at 6). The Petitioner said they had done so. (Id.) The Court asked the Petitioner if he was satisfied with his lawyer, and he said

---

[3] A guilty plea complies with the requirements of due process if it is entered knowingly and voluntarily under the totality of the circumstances. Brady v. United States, 397 U.S. 742, 748-49, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). See also United States v. Ruiz, 536 U.S. 622, 630, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002). A guilty plea may be involuntary if produced by actual or threatened physical harm or by mental coercion overbearing the will of the defendant. Brady, 397 U.S. at 751. If a defendant understands the charges against him and the consequences of entering a guilty plea, however, and voluntarily chooses to plead guilty, without being coerced, the guilty plea will be upheld. Alvarez v. Straub, 21 Fed. Appx. 281, at **2, 2001 WL 1298993 (6th Cir. Aug. 9, 2001).

he was. (Id.). The Court asked the Petitioner if he had any complaints about his lawyer, and he said no. (Id.)

The Court explained the maximum possible penalty the Petitioner was facing, supervised release, and the sentencing process. (Id., at 6-7). The Court also explained to the Petitioner that he would not be allowed to withdraw his guilty plea simply because he changed his mind, and the Petitioner said he understood. (Id., at 7-8). The Court advised the Petitioner of the rights he would be waiving by pleading guilty, and the Petitioner said that he still wanted to plead guilty. (Id., at 8-9).

The Court then asked the Petitioner about possible coercion or pressure:

Q. I want to make sure you understand that the government is not promising you anything in exchange for your plea of guilty. Do you understand that?

A. Yes.

Q. Has anybody forced you to plead guilty?

A. No.

Q. Has anybody put any pressure on you in any way to make you plead guilty?

A. No.

Q. Are you offering to plead guilty voluntarily because that's what you want to do?

A. Yes.

Q. Have you had any drugs or alcohol in the last 12 hours?

A. No.

Q. Are you taking any prescription medications?

A. No.

Q. Is your mind clear?

A. Yes.

Q. Do you know what you are doing?

A. Yes.

(Id., at 9-10).

After the Government witness read a statement of facts to support the guilty plea, the Court asked the Petitioner if the statement was true, and the Petitioner pointed out that the witness's statement about the Petitioner's comments when he was apprehended were not true. (Id., at 15). The Court then asked the Petitioner if he was guilty of the crime itself, and the Petitioner said that he was. (Id., at 15-16). The Court ultimately accepted the guilty plea after finding that it was validly entered:

> The Court has observed the appearance of Mr. Williams. He is in full possession of his faculties. He is not under the apparent influence of drugs. He understands the maximum possible penalty. He understands his constitutional rights. He understands the nature of the charge. He is aware that there is no plea agreement. He's offered to plead guilty knowingly, intelligently, and voluntarily. There is a factual basis for the plea of guilty. Certain facts are disputed, but they don't go to the elements of the offense.

(Id., at 16).

As the record set forth above demonstrates, the Court took great pains to determine whether the Petitioner's guilty plea was knowing and voluntary. The Petitioner gave no indication that it was not. Indeed, the Petitioner's lucidity at the hearing is demonstrated by his ability to identify those facts recited by the witness with which he disagreed. The Petitioner said nothing at the hearing about feeling pressure to enter the guilty plea because his conditions of

8

confinement were harsh, nor did he raise any issues about trial counsel's representation.

By the time the Court held the sentencing hearing, the Petitioner had been transferred from the Robertson County facility for over a month. (Docket No. 1, at 6; Docket No. 94 in Case No. 3:09-00090). The Petitioner said nothing during his allocution at that sentencing hearing about being coerced into pleading guilty based on his prior incarceration at the Robertson County facility, nor did he raise any issues about trial counsel's representation. (Docket No. 115, at 38-42, in Case No. 3:09-00090). Indeed, the Petitioner expressed gratitude to trial counsel during the allocution. (Id., at 40).

To support his argument that the conditions at the Robertson Count facility rendered his guilty plea involuntary, the Petitioner claims that this Court made findings to this effect in the underlying criminal case. Those findings are taken, out of context, from one of the Court's orders regarding the hearings into the jail conditions. In an Order issued *before* those hearings were held,the Court addressed the Government's argument that the conditions of the Defendant's confinement were not relevant in a criminal case:

> As for the Government's next contention, the Court finds that the conditions of the Defendant's confinement are relevant in this criminal case because those conditions can impede his ability to assist in his defense. The conditions can also affect his ability to make a knowing, intelligent and voluntary decision to go to trial or enter a guilty plea. Harsh conditions can become a coercive force in the Defendant's decision about whether to accept particular plea offers or to cooperate in an effort to obtain a 5K motion from the Government. Finally, the Court has the inherent power to supervise the conditions of the pretrial detention it has ordered.

(Docket No. 52, at 2, in Case No. 3:09-00090).[4] The Court's conclusion in this Order that it had

---

[4] Counsel for Petitioner cites a later Order issued by the Court (Docket No. 94 in Case No. 3:09-00090) after the conditions hearings were held in which the Court quotes this section from its prior Order.

9

the authority to explore the conditions of confinement clearly cannot be read as a specific finding that the Petitioner's guilty plea, made 18 days later, was not knowingly and voluntarily made.

Petitioner makes much of the absence of time records showing that trial counsel discussed the change of plea with him. As trial counsel testified, however, he had multiple discussions with the Petitioner at the jail, and in the courtroom during breaks, and he does not document every conversation he has with his clients. (Docket No. 29, at 97-102).

The record does reveal that trial counsel sent the Petitioner a two-page, single-spaced letter approximately one month before the change of plea hearing explaining various aspects of the Petitioner's case. (Exhibit 12 to Section 2255 Hearing Held on June 6, 2012). In the letter, trial counsel advised the Petitioner of the trial date, and the date of a status conference scheduled to discuss the Petitioner's conditions of confinement. (Id.) Trial counsel also advised the Petitioner that another client had been given a reduction in his sentence based on harsh conditions of confinement. (Id.) Trial counsel explained that the Career Offender guideline appeared to apply to the Petitioner, and that the estimated guideline range was 188 to 235 months. (Id.) Trial counsel explained that, because a firearm was involved in the bank robbery, the Government could bring a charge under 18 U.S.C. § 924(c), and that the Government usually did so when a defendant proceeds to trial. (Id.) Trial counsel explained that the Government would not add the firearm charge if the Petitioner elected to plead guilty to the Indictment as charged. (Id.)

Trial counsel explained that he had reviewed the relevant material and determined that there was not a basis for filing a motion to suppress the arrest or subsequent search. (Id.) Trial

counsel advised the Petitioner that the evidence appeared to be overwhelming, but that he could proceed to trial if he wished. (Id.) Trial counsel advised the Petitioner that if he proceeded to trial and was convicted, he could face guidelines of 262-327 months, and that a firearm charge would add at least a consecutive five-year sentence, and potentially a range of 360 months to life. (Id.) Trial counsel advised the Petitioner that if he pled guilty to the Indictment without a plea agreement, he would retain the right to argue for a sentence below the guidelines, and would retain his right to appeal the sentence – terms he would have to give up if he entered a plea agreement with the Government. (Id.)

The Petitioner has failed to show that his guilty plea was "uncounseled," or that it was not entered knowingly and voluntarily.

The Petitioner also argues that trial counsel was ineffective for failing to engage in meaningful plea negotiations. A defendant has a right to the effective assistance of counsel during the plea-bargaining process, and defense counsel generally has a duty to communicate formal plea offers to his client. Lafler v. Cooper, ____ U.S. _____, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012); Missouri v. Frye, ____U.S. ____, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012). . A defendant does not, however, have the right to be offered a plea. Missouri v. Frye, 132 S.Ct. at 1410. See also Weatherford v. Bursey, 429 U.S. 545, 561, 97 S. Ct. 837, 846, 51 L.Ed.2d 30 (1977); Dawkins v. United States, 2014 WL 2818889 (E.D. Tenn. June 23, 2014).

Trial counsel testified that no plea offer was ever made by the Government in this case (Docket No. 29, at 98), and the Petitioner has not offered any evidence to the contrary. Nor does the Petitioner explain what trial counsel could have done to obtain such an offer, in light of the

substantial evidence of guilt as outlined in the statement of facts at the change of plea hearing.

Without a plea offer from the Government, it was reasonable for counsel to advise the Petitioner to enter an open plea. By doing so, the Petitioner was able to avoid having the Government add a Section 924(c) firearms charge, and was able to request a reduction from the applicable guideline range, and to preserve his right to appeal. By focusing on the Petitioner's harsh conditions of confinement and his role as a "whistleblower," trial counsel persuaded the Court to reduce the Petitioner's sentence by 20 months from the low end of the guideline range. The Petitioner has shown nothing beyond mere speculation that another course of action would have resulted in a lower sentence.

Finally, Petitioner argues that trial counsel was ineffective for numerous alleged failings related to sentencing, including failure to challenge the Petitioner's designation as a Career Offender under the Sentencing Guidelines, and failure to argue that his criminal history was overstated. Petitioner contends that counsel aggravated these failures by suggesting that he was armed during the two qualifying prior offenses. The Petitioner has not shown, however, that any of these alleged failures would likely have resulted in a lower sentence.

Without citation to authority, Petitioner states that his two qualifying prior convictions were not crimes of violence because "there was no physical presence of any occupant and no weapons were involved." (Docket No. 71, at 25). The Presentence Investigation Report ("PSIR") in the underlying criminal case (Docket No. 125 in Case No. 3:09-00090) determined that the Petitioner was a Career Offender under U.S.S.G. § 4B1.1 based on two prior convictions in Tennessee state courts for aggravated burglary that qualified as "crimes of violence" under the

12

Guideline. (Id., at ¶¶ 24, 31, 33).

The version of Section 4B1.1 applicable at Petitioner's sentencing provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Application Note 1 states that the term "crime of violence" is defined in Section 4B1.2.

Section 4B1.2(a) provides:

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Aggravated burglary under Tennessee law "occurs when an individual enters a habitation 'without the effective consent of the property owner' and . . . intends to commit a felony. . . " United States v. Nance, 481 F.3d 882, 888 (6th Cir. 2007)(citing United States v. Sawyers, 409 F.3d 732, 736 (6th Cir. 2005); Tenn. Code Ann. §§ 39-14-402, 39-14-403). See also United States v. Brown, 516 Fed. Appx. 461 n. 1 (6th Cir. Feb. 26, 2013). There is no requirement that the defendant possess a weapon or that the habitation be occupied at the time of the offense. Thus, the Petitioner has failed to explain how trial counsel's failure to raise the absence of an occupant or a weapon impacted the Career Offender determination.[5] See, e.g., Ludwig v. United States,

---

[5] The Court notes, however, that trial counsel did point out at sentencing that the residences were not occupied at the time of the alleged offenses. (Sentencing Transcript, at 36 (Docket No. 115 in Case No. 3:09-00090)). Counsel also noted that the Petitioner committed

13

162 F.3d at 458 (Counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).

As for the alleged failure to argue that his criminal history was overstated, the Petitioner has failed to cite the applicable Sentencing Guideline regarding departures based on overstatement of his criminal history, or other applicable law supporting a reduction in his sentencing range. See U.S.S.G. § 4A1.3(b) (Downward departure may be warranted if defendant shows his criminal history category "substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.") The PSIR indicates that the Petitioner had nine criminal history points, and would have been in Criminal History Category IV even if the Career Offender enhancement had not applied. (PSIR, at ¶ 38 (Docket No. 125 in Case No. 3:09-00090)). Indeed, the Court specifically stated at the sentencing hearing that Category VI accurately reflected the Petitioner's criminal history. (Docket No. 115, at 44). Petitioner has not shown any likelihood of a departure or variance based on an "overstatement" argument.

In conclusion, the Petitioner has failed to demonstrate that trial counsel's representation was ineffective. In reaching its decision, the Court has fully considered the Declarations and other exhibits filed by the Petitioner, including the opinion rendered by Petitioner's legal expert, Robert D. Massey. The Court is not persuaded by Mr. Massey's opinion as it fails to identify specific arguments, supported by applicable facts and law, that trial counsel should have made

---

these offenses when he was 18 years old. (Id.) Counsel's brief statement that he could not tell from the PSIR if a weapon was used, but assumed there was, had no bearing on the Petitioner's sentence. (Id.)

that were likely to have resulted in a lower sentence.

Counsel for Petitioner, Ron Small, did an outstanding job for his client, Tellis Williams, and provided effective assistance of counsel. None of the arguments made by Petitioner would have resulted in a lower sentence.

IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE